GABROY LAW OFFICES
Christian Gabroy (#8805)
Kaine Messer (#14240)
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
Tel     (702) 259-7777
Fax    (702) 259-7704
christian@gabroy.com
kmesser@gabroy.com
*Attorneys for Plaintiff/Counter-Defendant*
*Russell LeBarron*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RUSSELL LEBARRON, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>INTERSTATE GROUP, LLC; DOES I through X; and ROE Corporations XI through XX, inclusive,<br><br>Defendant.<br><br>——————————————————<br><br>INTERSTATE GROUP, LLC;<br><br>Counterclaimant,<br><br>vs.<br><br>RUSSELL LEBARRON,<br><br>Counter-Defendant. | Case No.: 2:19-cv-01739-JCM-DJA<br><br>**JOINT PRETRIAL ORDER** |

After pretrial proceedings in this case,

IT IS SO ORDERED:

I.

This is an action for: Violation of Americans With Disabilities Act / Disability Discrimination / Failure To Accommodate and Retaliation brought by Plaintiff/Counter-Defendant Russell LeBarron ("LeBarron") against Defendant/Counterclaimant Interstate

Group, LLC ("Interstate"). Interstate brings a Counterclaim against LeBarron for Conversion and Civil Theft. Interstate alleges LeBarron stole parts from it and advertised them for sale on internet sites.

II.

Statement of jurisdiction: LeBarron contends this Court has jurisdiction over the ADA discrimination and retaliation claims pursuant to 42 USC § 12117. Interstate contends the Court has jurisdiction over the counterclaim for conversion and civil theft pursuant to 28 U.S.C. §1367(a).

III.

The following facts are uncontested and admitted by the parties and require no proof:

LeBarron was formerly addicted to opiates since about 2012 or 2013. He knows the addiction cost him a lot of money. Interstate manufactures enclosed cargo trailers and parts and sells them at its TrailersPlus store in Las Vegas. LeBarron was hired by Interstate on May 11, 2012. He quit once but Interstate hired him back. LeBarron knew that his attendance was important and that he had to be physically present to sell trailers for Interstate. He understood that he would not get paid if he did not come to work.

LeBarron was paid on an hourly plus commission basis for selling trailers and parts. The sales office in Las Vegas was normally comprised of four people. At the time LeBarron was employed, Interstate had no formal leave policies for those four employees.

Every day that LeBarron was sick, he would let the store manager know on a daily basis. He was aware that Interstate did not offer paid vacation days other than its six paid holidays.

Every month that LeBarron was a part of the health insurance, he had to pay a part of his premium cost. A portion of his premium cost came out of his check every two weeks. Every day that he missed work because he was sick, he would let the store manager know.

January 27, 2018 was the last day that LeBarron physically worked at Interstate. He went to Seven Hills Hospital for detox from January 30, 2018 through February 4, 2018.

1  Seven Hills discharged LeBarron on February 4, 2018. It said LeBarron may return to work
2  at Interstate without restrictions on February 8, 2018. When LeBarron checked in to Seven
3  Hills Hospital, his wife communicated with Wes Smith. Wes Smith was LeBarron's store
4  manager and immediate supervisor.
5  On January 30, 2018, LeBarron's wife texted Wes and said, "Hi Wes, it's Stacie.
6  Russell is doing okay he will be out of work for a few days I will know more tomorrow and
7  keep you updated!"
8  On February 2, 2018, Wes asked Stacie, "How is he?" Stacie wrote back and said
9  he was doing well and asked, "Does he need to cooperate to let them know how long he
10 will be out?"
11 Wes replied that yes, LeBarron would have to call him or Alex and "let us know how
12 long." On February 3, 2018, Wes sent a text message stating "Hey Stacie, I need to know
13 what Russ has planned for work. My boss says we need to get some paperwork stating
14 where he is and how long he is expected to be there."
15 Stacie replied, "Hi, he will call you tomorrow, he will be released." Wes said, "Okay
16 thank you."
17 On February 8, 2018. Wes said, "Hey Stacie, do you know what Russ has planned
18 for work? Alex wants to know if we need to hire someone else. I have text [sic] Russ and
19 called him."
20 On February 8, 2018, Stacie responded and said, "He said someone should be
21 calling for him to use his FMLA! I will call when I'm on break to find out, sorry about this
22 but he will be out for 30 or more days!" LeBarron did not know whether he had FMLA. He
23 said FMLA was a suggestion of his counselor at Hope Canyon. The FMLA did not apply
24 to Interstate's Las Vegas store.
25 Stacie next told Wes, "I have not heard anything from the place he is at  All I know
26 is he can't call out I can't call in and I can't get ahold of anyone but I know who's gonna be
27 out for 30 days far as I know right now"

1   Wes then wrote Stacie, "Okay, I did get a letter about 2 hours ago from the facility. It just said he will be there for sometime."

Stacie said, "Wait! what is some-time??"

Wes then sent Stacie a photo of the letter from Hope Canyon which said, "Please note that on the 5th of February 2018, Russell LeBarron was admitted into our care at Hope Canyon Recovery.  He will be in our care until further notice.  Should you have any further questions please feel free to contact us at the number provided below."

Wes then said to Stacie, "Not some time ha ha.  It says will be in our care until further notice.  Here is the letter."

Six days later, on February 14, 2018, Alex Mandujano, the District Manager for Interstate, wrote an e-mail to Interstate's Regional Director Clay Baillie (among others) and said:

> Hi All,
> I just wanted to get this information out for all to review.
> SC Russ LeBarron has been admitted to a facility for treatment and is not communicating with
> TP staff directly.  His spouse has informed SM Wes Smith that they don't have a specific date of his return to work.
> He has not been working since 01/27/18 which was his last day worked.
> Attached is a letter from the facility he has been admitted to stating that he will be in their care until "further notice."  I felt [sic] important to get this information out as Russ takes advantage of TP medical insurance
> I called out to his spouse to get some kind of update from her she did not answer so I left a message and will update if/when I hear back.  Thank you.

LeBarron's termination was processed on February 15, 2018, as a quit.  Under additional notes, the exit checklist states, "TP has not had communication with Russ since a text message he sent Store manager Wes Smith stating he was going into a treatment facility.  We have not heard from Russ since.  Attached is a medical not [sic] stating his return is unknown."

1    LeBarron did not return to work at Interstate. He was unable to work during the
2 entire month of February 2018. Interstate knew that LeBarron was in a drug rehabilitation
3 program.

4    On February 27, 2018, Wes sent Stacie a text message stating "Hey Stacie, how is
5 Russ doing?"

6    Stacie responded, "He is doing great, thanks for asking! Does he still have his job
7 he should be back in about 2 weeks!"

8    Wes then stated "They did have to let him go on the books for insurance reasons.
9 But once he is ready they put him down as a rehire when he comes back."

10                                    IV.

11    The following facts, though not admitted, will not be contested at trial by evidence
12 to the contrary:

13

14    On December 19, 2019, Interstate's insurance carrier was asked what the carrier's
15 "rule" is regarding employees who are out on leave and who are not entitled to FMLA leave.
16 Interstate was told the "rule" was that "[a]s long as they come back in the same month,
17 they can remain on the group as an active employee. Otherwise, they need to be offered
18 Cobra."

19                                    V.

20    The following are issues of fact to be tried and determined upon trial:

21    On February 7, 2018, Interstate's management internally listed LeBarron's position
22 as an "Open[] Hiring Target."

23    The checklist indicated LeBarron paid towards his insurance premiums during the
24 month of February 2018.

25    Following his successful completion of Hope Canyon's 30-day rehabilitation
26 program, LeBarron remains sober to this day.

27    LeBarron abandoned his job and quit. Intestate processed his termination as a quit
28 on February 15, 2018.

1   LeBarron had already received a leave of absence for medical treatment from Seven
2   Hills Hospital and had been released to return to work on February 8, 2018.  He was
3   discharged from the hospital on February 4, 2018, and he did not contact his employer.
4   He was able to contact Interstate on February 4, 2018, but failed to do so.

5   LeBarron's wife told Interstate that LeBarron would be released from the hospital on
6   February 4 and would call Wes Smith.  LeBarron was released on February 4, 2018, was
7   able to call Wes Smith but did not call Wes Smith.

8   Neither LeBarron nor his wife requested that he be placed on an unpaid medical
9   leave on or after February 8, 2018.  Neither requested that his job at Interstate be held
10  open for him.  Neither requested any further accommodation.  Mandujano called
11  LeBarron's wife on February 14, 2018, and left a message.  She did not return the call and
12  thus, she stopped the interactive process.

13  Interstate knew LeBarron was in a drug rehabilitation program and offered to rehire
14  him.  Wes Smith told LeBarron's wife that he was eligible for rehire when he comes back.
15  LeBarron testified under oath that he was never told he was fired and that his wife never
16  told him he was eligible for rehire.  LeBarron never applied for rehire.  LeBarron never
17  returned to Interstate.

18  Interstate engaged in the interactive process with LeBarron's wife and LeBarron
19  received 2 ½ weeks of unpaid leave.  Interstate kept his job open until February 15, 2018.

20  Interstate needed to hire a replacement for LeBarron because he had not come to
21  work since January 27, 2018.

22  When LeBarron's termination was processed, he was subject to rehire.

23  LeBarron was hired by Aria Resort as a Sales Associate 1 on December 8, 2009.
24  On February 10, 2012, Aria discovered the Terrene/Papillion store was missing a pair of
25  "18 K Gold Jordan Schlanger Oval Hoop Earrings."  The estimated value was $712.49
26  USD.  On February 28, 2012, Aria requested Detective Russell Lee run two names and
27  possibly track if any items were pawned in the last month.  "At approximately 1:44 p.m.,
28  Detective Lee responded via e-mail and confirmed Papillion employee Russell LeBarron

pawned a pair of Yellow Gold Bangle Earrings 6.1G 18K (.750) on 1/21/2012 4:14:05 p.m. at a local pawn shop (pawn shop name: unknown)." LeBarron furnished a statement to Aria denying that he took the earrings. He was terminated by Aria on April 25, 2012.

LeBarron was charged with grand larceny on April 23, 2012, for stealing the jewelry and he entered a plea of nolo contender for misdemeanor theft on August 2, 2012. He was sentenced to 60 days in jail which was suspended.

On April 26, 2012, LeBarron applied for employment at Interstate and said his reason for leaving Aria Resort & Casino was "looking for a carrer [sic] I can advance with." He listed Stacie Miller, a co-worker at Aria, as a reference. LeBarron did **not** disclose that the reason he left Aria was because he was terminated for theft. On October 21, 2012, LeBarron asked for and was given an emergency pay advance by Interstate of $500 for his "daughter's medical bills." On October 30, 2012, he paid $200 as restitution and $400 as CC fines on his misdemeanor theft plea.

LeBarron was released from Seven Hills Hospital on February 4, 2018, but he did not call Wes. On February 14, 2018, Alex Mandujano called LeBarron's wife, Stacie, and left a voicemail inquiring about an update when LeBarron would return to work. She did not answer her phone or return Mandujano's call.

LeBarron has admitted that attendance was an essential function of his job at Interstate. He was eligible for rehire. LeBarron said he would not apply for rehire at Interstate and he never applied to be rehired.

Neither LeBarron nor his wife requested that he be placed on an unpaid medical leave or that his job be held open for him.

About two weeks before LeBarron was terminated, his direct supervisor and store manager, Wes Smith, and co-worker, Cesar Hernandez, discovered ads on Craigslist and Let-Go advertising trailer accessories, parts and locks for sale. When Smith confronted LeBarron, he first denied that his phone number was listed in the ads. He then started "crying and promised not to steal anymore locks" from the store. LeBarron "brought back one coupler lock and two hockey pucks." Smith alerted upper management of LeBarron's

theft only after LeBarron was terminated. To date, Interstate believes he stole and converted about $7,014.36 in "locks and other trailer accessories and parts[,] including tires."

VI.

The following are Defendant/Counterclaimant's issues of law.

Interstate engaged in the interactive process with LeBarron's wife and identified and implemented an appropriate reasonable accommodation of holding his job open until February 15, 2018, when LeBarron's wife ceased communicating with Interstate. She did not return Alex Mandujano's telephone call of February 14, 2018. LeBarron's wife stopped the interactive process.

LeBarron himself never requested an accommodation.

LeBarron failed to mitigate his damages.

Pursuant to 42 U.S.C. § 1981(a)(3), damages may not be awarded under this section where a reasonable accommodation (rehire) would provide LeBarron with an equally effective opportunity and would not cause an undue hardship on the operation of the business. Rehire was offered and LeBarron failed to return to Interstate to be rehired.

In paragraph 23 of the Second Amended Complaint, LeBarron said 30 days of leave was a reasonable accommodation. Even if LeBarron had been granted 30 days of leave rather than 18 days of leave, he would have been unable to return to work at Interstate in 12 more days. If Interstate had kept his job open for a total of 30 days, LeBarron would still have been at Hope Canyon and unable to perform the essential functions of his job with or without a reasonable accommodation.

LeBarron was not entitled to any FMLA. Because LeBarron had no FMLA rights, he had no right to continued health insurance benefits. LeBarron was given the COBRA notice but he did not elect COBRA.

Until the regional manager of Interstate discovered that LeBarron stole locks from Interstate, LeBarron was eligible for rehire. LeBarron was not eligible for rehire after the

1. regional manager discovered LeBarron's theft.

2. LeBarron would never have been hired and would have been fired immediately if Interstate had known of LeBarron's theft at Aria.

3. LeBarron's wrongdoing at both Aria and Interstate was illegal and of such severity that he would have been terminated on those grounds alone, if the regional manager at Interstate had known of his wrongdoing at the time he quit, and his termination was processed.

4. LeBarron did not have a disability.

5. Interstate did not discriminate against LeBarron on the basis of any disability. LeBarron testified under oath that he did not attempt to be rehired by Interstate.

6. LeBarron was not able to perform the essential functions of his job with or without an accommodation.

7. LeBarron did not request an accommodation.

8. After LeBarron was released to return to work on February 8, 2018, his new healthcare provider said LeBarron would be in their "care until further notice." The healthcare provider never gave Interstate any further notice.

9. LeBarron did not participate in the interactive process.

10. Indefinite leave does not have to be provided as an accommodation.

11. Regular and reliable attendance was an essential part of LeBarron's job. LeBarron received an 18-day leave of absence as an accommodation.

12. The EEOC Investigator, Mark Brennan, recommended a no-cause finding with respect to LeBarron's EEOC allegations.

13. LeBarron was an at-will employee.

14. LeBarron's Second Amended Complaint fails to state a claim upon which relief can be granted.

15. Continued leave would impose an undue hardship on Interstate because Interstate needed to hire a replacement salesperson.

16. Punitive and compensatory damages are not available for ADA retaliation claims.

1     LeBarron's claims are barred by 42 U.S.C. § 12201(c)(3).

2     LeBarron's claims are barred by the statute of limitations.

3     Leave is not an accommodation required by the ADA.

4     Indefinite leave is not required by the ADA.

5     An employer is not required to offer an open-ended leave.  LeBarron never requested a set defined interval of extended leave.

7     Since LeBarron was eligible for rehire after February 15, 2018, there is no evidence that LeBarron's alleged disability played any role in his termination.

9     LeBarron has provided no evidence that his alleged disability was more likely the reason for his termination.

11    LeBarron's failure to apply for rehire terminates all liability for backpay, front pay, compensatory damages, punitive damages and/or attorney's fees or costs.

13    LeBarron's claims are barred by fraud and illegality.

14    LeBarron's claims are barred by payment.

15    LeBarron's claims are barred by subsequently acquired evidence of dishonesty and theft.

17    A possible retaliation termination can be cleansed by an offer to rehire the employee upon his return from medical leave.

19    Defendant-Counterclaimant is entitled to recover the retail value of all items stolen by Plaintiff-Counterdefendant and punitive damages, attorney's fees and costs.

21    The following are Plaintiff's/Counter-Defendant's issues of law.

22    Whether Plaintiff/Counter-Defendant was discriminated against and ultimately terminated based upon his actual disability of drug addiction and entering into two supervised rehabilitation programs by Defendant in violation of the ADA.

25    Whether Plaintiff/Counter-Defendant sought a reasonable accommodation.

26    Whether Defendant-Counterclaimant granted Plaintiff a reasonable accommodation.

28    Whether Defendant/Counterclaimant retaliated against Plaintiff after he requested

to enter a rehabilitation program.

Whether Plaintiff/Counter-Defendant engaged in protected activity by entering two supervised rehabilitation programs and was terminated in retaliation for such activity.

Whether Plaintiff was retaliated against in that Defendant filed a Counterclaim for theft in bad faith against him.

Whether 30 days of leave was a reasonable accommodation.

Whether Plaintiff could have returned to work after 30 days of leave.

Whether Plaintiff/Counter-Defendant is entitled to damages, fees, or costs as allowed by law.

Whether Plaintiff/Counter-Defendant is entitled to punitive damages.

Whether Plaintiff/Counter-Defendant committed Conversion.

Whether Plaintiff/Counter-Defendant committed Civil Theft.

Whether the Counterclaimant is entitled to the retail value of the items stolen, attorney's fees, costs and/or punitive damages from Plaintiff/Counter-Defendant for theft.

VII.

The following Exhibits are stipulated into evidence in this case and may be so marked by the clerk:

(a) Joint Exhibit 1 – All of the text messages from Stacie to and from Wes Smith, Alex Mandujano and Mike Snook.

Joint Exhibit 2 – Seven Hills Hospital Release dated 2/4/2018.

Joint Exhibit 3 – Hope Canyon letter stating that on the 5th of February 2018, LeBarron was admitted into their care at Hope Canyon Recovery and will be in their care until further notice.

Joint Exhibit 4 – February 14, 2018 e-mail and exit checklist.

(b) As to the following exhibits, the party against whom the same will be offered objects to their admission on the grounds stated.

**(1)  Plaintiff/Counter-Defendant's Exhibits and objections to them:**

1. Interstate Employee Relations Manual (IG000170-186, IG000567-604)  The

|   |   |   |
|---|---|---|
| 1 |   | objection is relevance and hearsay. |
| 2 | 2. | June 2, 2016 Employee Notice of Corrective Action to LeBarron (IG000220) |
| 3 |   | The objection is relevance and hearsay. |
| 4 | 3. | September 30, 2016 Employee Notice of Corrective Action to LeBarron |
| 5 |   | (IG000212, IG000358 duplicate)  The objection is relevance and hearsay. |
| 6 | 4. | January 3, 2018 Interstate Group Letter re: Retirement Plan and Plan |
| 7 |   | Descriptions (LeBarron 0034-0055)  The objection is relevance and hearsay. |
| 8 | 5. | Text message from Stacie to Alex Mandujano, District Manager (LeBarron |
| 9 |   | 0018)  Objection is duplicate to JX 1. |
| 10 | 6. | Letter from Hope Canyon to D (LeBarron 0021)  Objection is duplicate to JX |
| 11 |   | 3. |
| 12 | 7. | March 17, 2018 Email from Mandujano to Baillie, Smith, and Hernandez |
| 13 |   | (IG000136-137)  Objection is duplicate to JX 4. |
| 14 | 8. | October 25, 2018 Letter from Michael Snow (Interstate CEO) to EEOC (Pearl |
| 15 |   | Sarach) (IG000531)  No objection. |
| 16 | 9. | March 5, 2019 TrailersPlus Response to eeoc (LeBarron 0058-0062, |
| 17 |   | IG000532-34)  No objection. |
| 18 | 10. | Medical Records, dated 11/14/18-12/10/18 (LeBarron 0002-0015)  Objection |
| 19 |   | of relevance, authenticity and hearsay. |
| 20 | 11. | Medical Records, dated 02/07/18-02/24/18 (LeBarron 0056-0057)  Objection |
| 21 |   | of relevance, authenticity and hearsay. |
| 22 | 12. | 2017 W2 for LeBarron (LeBarron 0016)  No objection. |
| 23 | 13. | Weekly Work Searches (Unemployment Insurance) (LeBarron 0022-0029) |
| 24 |   | Objection of relevance, authenticity and hearsay. |
| 25 | 14. | "COBRA" Health Plan Continuation Coverage Highlights form (IG000455- |
| 26 |   | 462)  No objection. |
| 27 | 15. | Inventory Adjustment sheets (IG000463-471)  No objection. |
| 28 | 16. | September 21, 2018 Charge of Discrimination (IG000523)  No objection. |

| | | |
|---|---|---|
| 17. | October 10, 2018 Amended Charge of Discrimination (LeBarron 001)  No objection. | |
| 18. | Defendant's Answer to Plaintiff's First Set of RTA  Objection as to relevance. | |
| 19. | Defendant's Responses to Plaintiff's First Set of INTG  Objection as to relevance. | |
| 20. | Defendant's Responses to Plaintiff's First Set of RTP (No Documents Just Pleading) Objection as to relevance. | |
| 21. | Guidelines for Craig's List Posting Outside of Work Hours (IG000273) Objection as to relevance and hearsay. | |
| 22. | February 3, 2018 email from Mandujano Ashcraft, Baillie, VanKirk, Tippets, Hall, Pettit, Schroeder, Snow, Asbell, Casper, Hilde, Smith, Thompson, Luteyn, Martin, and Koel (IG000012-14)  No objection. | |
| 23. | February 7, 2018 email from Mandujanu to Snow, Luteyn, Baillie, Casper, and Hilde (IG000124)  No objection. | |
| 24. | June 5, 2020 letter from Malani L. Kotchka  Objection as to relevance and hearsay. | |
| 25. | Defendant's Initial Disclosures (No Documents but Just Pleading Language) Objection as to relevance and hearsay. | |
| 26. | Defendant's First Supplemental Disclosures (No Documents but Just Pleading Language)  Objection as to relevance and hearsay. | |
| 27. | Defendant's Second Supplemental Disclosures (No Documents but Just Pleading Language) Objection as to relevance and hearsay. | |
| 28. | Documents Defendant describes as "Defendant's inventory reports for the missing parts and their value, which LeBarron advertised on Craiglist" (IG000548-562)  No objection. | |
| 29. | December 19, 2019 email from Beth House to Sonya C. George (IG000546) Objection as to relevance and hearsay. | |
| 30. | February 4, 2018 email from Joshua Hall to Michael Schroeder (IG000071- | |

73) Objection as to relevance and hearsay.

31. February 4, 2018 email from Michael Schroeder (IG000073-76)  Objection as to relevance and hearsay.

32. March 9, 2018-April 19, 2018 company email correspondence (IG000138-142)  Objection as to relevance and hearsay.

33. February 4, 2018 email from Matt Pettit to Michael Schroeder (IG000107-110)  Objection as to relevance and hearsay.

34. Employee Hiring Checklist (IG000173)  Objection as to relevance and hearsay.

35. Defendant's Third Supplemental Disclosures (No Documents just Pleading Language)  Objection as to relevance and hearsay.

36. Defendant's Fourth Supplemental Disclosures (No Documents just Pleading Language)  Objection as to relevance and hearsay.

37. Documents Defendant describes as "Records produced by Let-Go" (IG000674-677)  No objection.

38. Pay Statement for 2/8/2018 Pay Date (IG000168)  Objection as to relevance and hearsay.

39. Interstate Group document re 'overcompensation' (IG000187)  Objection as to relevance and hearsay.

40. Pay Statement for 1/25/2018 Pay Date (IG000194)  Objection as to relevance and hearsay.

41. Training Syllabus (IG000257)  Objection as to relevance and hearsay.

42. Plaintiff's 3rd Supplemental Disclosures and documents LeBarron 144-156  Objection as to relevance and hearsay.

43. Plaintiff's 4th Supplemental Disclosures and documents LeBarron 157-168  Objection as to relevance and hearsay.

44. Plaintiff's 1st Supplemental Disclosures and documents LeBarron 065-134  Objection as to relevance and hearsay.

45. August 31, 2020 TrailersPlus website return policy (LeBarron 194-195) Objection as to relevance and hearsay.

**(2)    The following are the Defendant/Counterclaimant's Exhibits and Objections to them:**

46. Cesar Hernandez's lawsuit against Russell LeBarron (IG0710-0717). Objection as to relevance, foundation, hearsay, FRE 403, FRE 404, FRE 901a, FRE 611a, FRE 602, 901a.

47. Criminal Complaint filed April 23, 2012 and Justice Court Docket Sheet for that Criminal Complaint. Objection as to relevance, foundation, hearsay, FRE 403, FRE 404, FRE 901a, FRE 611a, FRE 602, 901a, FRE 609.

48. E-mails concerning the Las Vegas store or LeBarron from February 3, 3018 through March 17, 2018 (IG0012-0014, 00149, 0124-0128, 0136-0137). Objection as to relevance, duplicative, compound and hearsay.

49. Records produced by Aria regarding the investigation and termination of LeBarron for stealing and pawning a pair of yellow gold bangle earrings (IG 0681-0702). Objection as to relevance, foundation, hearsay, FRE 403, 404, 901a, 611a, 602, 901a and FRE 609.

50. EEOC documents (IG0472, 0474-0480, 0483-0485, 0494, 0523, 0531-0534). Objection as to relevance, hearsay, FRE 403, 404, 611(a), 602.

51. Craigslist advertisements placed by LeBarron from May 9, 2017 through January 2018 (IG0540-0545). Objection as to relevance, foundation, hearsay. FRE 403, FRE 404, FRE 901a, FRE 611a, FRE 602, 901a

52. Inventory Adjustment reports showing missing locks (IG0463-0471). Objection as to relevance, foundation, hearsay. FRE 403, FRE 404, FRE 901a, FRE 611a, FRE 602, 901a

53. All of LeBarron's requests for pay advances while employed by Interstate (IG0198, 0201, 0207, 0217, 0218, 0221, 0222, 0233, 0238, 0239, 0263,

0264, 0280-0282, 0426-0428). Objection as to relevance, hearsay, prejudicial, FRE 403, 404.

54. List and Inventory Adjustment report showing missing parts from the Las Vegas store in 2017 (IG0548-0562). Objection as to relevance, hearsay, prejudicial, foundation, speculative, opinion, 403 and 404

55. LeBarron's Application for Employment at Interstate (IG0299-0302). Objection as to relevance, prejudicial, hearsay, FRE 403, 404.

56. LeBarron's Employee Information Sheet (IG0306). Objection as to relevance, hearsay.

57. Documents from OfferUp showing devices used by LeBarron (IG0606-0607). Objection as to relevance, foundation, speculative, prejudicial, hearsay, FRE 403, 404.

58. Documents produced by Letgo concerning LeBarron's ads (IG0674-0677). Objection as to relevance, foundation, speculative prejudicial, hearsay, 403, 404.

59. Job description for the Sales Consultant job signed by LeBarron on December 15, 2013 (LeBarron018-020, IG0170). Objection as to relevance, hearsay

60. Documents showing payroll adjustments for LeBarron (IG0188-0192, IG0194, IG0187). Objection as to relevance, hearsay

61. March 9, 2019 e-mail from Amanda Zoubi (IG0140). Objection as to relevance, foundation, hearsay, prejudicial, speculative.

62. COBRA letter (IG0455-0462). Objection as to relevance, hearsay.

63. Beth House December 19, 2019 e-mail (IG0546-0547). No objection.

64. 2015 W-2, 2016 W-2, 2017 W-2, and 2018 W-2 (IG00563-00566). Objection as to relevance.

65. Excerpts from the 2017 Employee Relations Manual (IG0568, 0570, 0571-0574, 0578-0580). Objection as to relevance, hearsay

66. Documents regarding a theft of property from another Interstate facility (IG0703-0709). Objection as to relevance, foundation, speculative, prejudicial, hearsay, FRE 403, FRE 609.

67. Declaration of Clay Baillie (IG0678). Objection as to relevance, hearsay, foundation, speculative, prejudicial, assumes facts not in evidence, confusing, counsel testifying, improper form, incomplete testimony, opinion,.

68. Declaration of Wesley Smith (IG0679). Objection as to relevance, hearsay, foundation, speculative, prejudicial, assumes facts not in evidence, confusing, counsel testifying, improper form, incomplete testimony, opinion

69. Plaintiff's Responses to Defendant's First Set of Interrogatories. Objection as to form, relevance, hearsay.

70. Plaintiff's Amended Responses to Defendant's First Set of Interrogatories. Objection as to form relevance, hearsay.

71. Clark County Court Calendar Results for Plaintiff/Counterdefendant. (IG0718-0721). Objection as to relevance, form, prejudicial, foundation, hearsay, improper character evidence, FRE 403, 404, 603, FRE 609.

(c) **Electronic Evidence**

The parties intend to present electronic evidence for purposes of jury deliberations. Further, the parties will meet and confer regarding such submission. They understand that they will receive instructions and guidance regarding what to submit before trial commences.

(d) Depositions:

(1) Plaintiff/Counter-Defendant will offer the following depositions:

Plaintiff/Counter-Defendant reserves the right to use the deposition of Defendant/Counterclaimaint's FRCP 30(b)(6) witness Clay Baillie and/or Michael Snow as permitted under Fed. Rule Civ. Pro. 32, but does not anticipate offering the depositions into evidence unless the individuals do not appear for trial. If such individuals do not appear for trial, Plaintiff anticipates using such deposition testimony.

1    (2) Defendant/Counterclaimant will offer the following depositions:

2 Deposition of Russell LeBarron for all purposes.

3  (e) Objections to Depositions:

4    Plaintiff objects to the use of Russell LeBarron's deposition for

5 all testimony that is objectionable, subject to motion in liimine, subject

6 to the objections above regarding such documents. Further, Russell

7 LeBarron will be present to testify as such deposition testimony will be

8 cumulative. _____

9      VIII.

10 The following witnesses may be called by both the parties upon trial:

11–14

 Russell LeBarron
 c/o Gabroy Law Offices
 Christian Gabroy, Esq.
 The District at Green Valley Ranch
 170 South Green Valley Parkway, #280
 Henderson, Nevada 89012

15–17

 Stacie LeBarron
 c/o Gabroy Law Offices
 Christian Gabroy, Esq.
 The District at Green Valley Ranch
 170 South Green Valley Parkway, #280
 Henderson, Nevada 89012

18–20

 Wes Smith
 Manager
 Phone Number 707-280-4160
 Address Unknown
 E-mail: sonnysmith707@gmail.com

21–23

 Alex Mandujano
 District Manager
 Phone Number 208-553-5801
 1213 N. Meridian Road
 Meridian, ID 83642

24–27

 Clay Ballie
 c/o Malani L. Kotchka, Esq.
 Hejmanowski & McCrea LLC
 520 South Fourth Street, Suite 320
 Las Vegas, Nevada 89101
 Phone: 702-834-8777
 Email: mlk@hmlawlv.com

28 Cesar Hernandez

```
                    Phone number 702-772-2896
                    6917 Double Vista Way
                    Las Vegas, NV 89142

                    Michael Snow
                    c/o  Malani L. Kotchka, Esq.
                    Hejmanowski & McCrea LLC
                    520 South Fourth Street, Suite 320
                    Las Vegas, Nevada 89101
                    Phone:  702-834-8777
                    Email: mlk@hmlawlv.com
```

The parties incorporate all custodians of records as witnesses as well.

These can be included with the exhibits.

Plaintiff/Counterdefendant may call:

```
                    Steve Switzer
                    Operations Manager
                    702-469-7850
                    Address Unknown
```

## IX.

The attorneys have met and jointly offer these three trial dates:

**April 4-7, 2022, May 2-6, 2022, October 25-28, 2022**

It is expressly understood by the undersigned that the Court will set the trial of this matter on one (1) of the agreed upon dates if possible; if not, the trial will be set at the convenience of the Court's calendar.

## X.

It is estimated that the trial herein will take a total of __**3**__ days.

APPROVED AS TO FORM AND CONTENT:

Attorney for Plaintiff/Counter-Defendant

_/s/ Christian Gabroy_____

Attorney for Defendant/Counterclaimant

_/s/ Malani L. Kotchka_____

## XI.

ACTION BY THE COURT

1  This case is set down for ~~Court~~/jury trial on the ~~fixed~~/stacked calendar on
2  __June 27, 2022 at 9:00 AM__. Calendar call shall be held on __June 22, 2022 at 1:30 PM__.

DATED: September 28, 2021.

_[signature]_
UNITED STATES DISTRICT JUDGE

| Dated this 27th day of September 2021. | Dated this 27th day of September 2021. |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| /s/ *Christian Gabroy* <br> Christian Gabroy, Esq. <br> Nev. Bar No. 8805 <br> GABROY LAW OFFICES <br> 170 S. Green Valley Parkway, Ste 280 <br> Henderson, Nevada 89012 <br> Tel (702) 259-7777 <br> Fax (702) 259-7704 | /s/ *Malani L. Kotchka* <br> Malani L. Kotchka, Esq. <br> Nev. Bar No. 0283 <br> HEJMANOWSKI & MCCREA LLC <br> 520 South Fourth Street, Suite 320 <br> Las Vegas, NV  89101 <br> Tel: (702) 834-8777 <br> Fax: (702) 834-5262 |
| *Attorneys for Plaintiff/Counter-Defendant* | *Attorney for Defendant/Counterclaimant* |